IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WILLIAM W. CHILDS, | CV 22–165–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff William W. Childs brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act ("SSA").  The Court will affirm the Commissioner's decision and dismiss this case because substantial evidence supports the Administrative Law Judge's ("ALJ") findings that Plaintiff is not disabled within the meaning of the SSA.

**BACKGROUND**

Plaintiff filed an application for disability benefits under Title II on June 11, 2019.  (Doc. 4 at 313.)  Plaintiff initially alleged a disability onset date of August 1, 2014, but later amended the onset to June 1, 2018.  (*Id.*)  Plaintiff's date last insured ("DLI") for Title II benefits is September 30, 2020; thus, Plaintiff is

required to establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.  (*Id.* at 999); *see also* 42 U.S.C. §§ 416(i), 423(d).

Plaintiff's claims were denied initially on August 13, 2019, and upon reconsideration on October 25, 2019.  (Doc. 4 at 76–91; 92–109.)  Following a hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's claims on May 20, 2020.  (*Id.* at 21–34.)  On August 5, 2020, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.  (*Id.* at 13.)

Plaintiff then appealed the Commissioner's decision to this Court, arguing that the ALJ's decision was not supported by substantial evidence for three main reasons.  First, Plaintiff argued that the ALJ improperly assessed and rejected the opinions of his treating physicians and healthcare providers.  Second, Plaintiff argued that the ALJ failed to consider the effects of Plaintiff's treatment pursuant to SSR 96-8p, and improperly discounted testimony when determining Plaintiff's residual functional capacity ("RFC").  Finally, Plaintiff argued that the ALJ erred by relying on vocational expert testimony elicited in response to an incomplete hypothetical question.  (*Id.* at 1089.)

The Court rejected much of Plaintiff's argument, finding that the ALJ had reasonably and permissibly relied on treating physicians' findings to conclude

Plaintiff was not disabled.  (*Id.* at 1098.)  The Court further found that the ALJ had provided clear and convincing reasons for discrediting Plaintiff's subjective symptom testimony.  However, the Court identified reversible error in the ALJ's failure to consider the effects of Plaintiff's treatment, noting that the ALJ failed to consider or discuss the frequency of appointments, the ability to schedule outside working hours, or the potential that the frequency would be ongoing.  (*Id.* at 1103–04.)  Because the ALJ did not adequately consider Plaintiff's treatment needs in the RFC, the vocational expert's hypothetical might have been affected and thereby undermined the expert's testimony that Plaintiff could perform other work existing in the national economy.  (*Id.* at 1105.)  The Court remanded for the ALJ to "reconsider whether Plaintiff [could] perform work found in the national economy on a regular and continuing basis, based upon a hypothetical that incorporate[d] all of Plaintiff's impairments and limitations supported by the record."  (*Id.*)

Following a second hearing, the ALJ again denied Plaintiff's claims on July 21, 2022.  (*Id.* at 999.)  The ALJ's decision became final after a 60-day period, after which Plaintiff brought a new action in this Court.

LEGAL STANDARDS

## I. Standard of Review

42 U.S.C. § 405(g) allows limited judicial review of Social Security benefit determinations after the Commissioner, following a hearing, has entered a final decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The Court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by such evidence and the ALJ applied the correct legal standards, the Court must affirm the Commissioner's adoption of that decision. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. Thus, "[w]here evidence is susceptible to more than one rational interpretation," the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court will not reverse

4

an ALJ's decision for errors that are harmless.  *Id.*

## II. Disability Determination

To qualify for disability benefits under the SSA, a claimant bears the burden of proving that (1) they suffer from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(1)(A)–(2)(A).

In determining whether a claimant qualifies as disabled under the SSA, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920.  In steps one through four, the claimant bears the burden of establishing disability.  *Burch*, 400 F.3d at 679.  If he meets this burden, the burden of proof shifts to the Commissioner in step five.  *Id.*

In step one of the evaluation, the ALJ determines whether the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in such activity, they are not disabled within the meaning of the SSA.  *Id.*

In step two, the ALJ determines whether the claimant has any impairments—singly or in combination—that qualify as severe under the applicable regulations and have lasted or are expected to last at least twelve (12)

months.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or

combination of impairments qualifies as severe if it "significantly limits your

physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c),

416.920(c).  If the ALJ finds that the claimant does not have a severe impairment,

the claimant is not disabled within the meaning of the SSA.  *Id.*  If the claimant has

a severe impairment, the ALJ proceeds to step three.

In step three, the ALJ compares the claimant's impairments to the listings

found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R.§§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments meet or equal

the criteria of a listed impairment, then the claimant is considered disabled.  *Id.*  If

the claimant's impairments do not, the ALJ proceeds to step four.

If the evaluation continues beyond step three, the ALJ must assess the

claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e),

416.920(e).  The claimant's RFC is an assessment of the work-related physical and

mental activities the claimant can still do despite his limitations and related

symptoms.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

In step four, the ALJ determines whether the claimant retains the RFC to

perform his past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).  If the claimant establishes an inability to engage in past work,

the burden shifts to the Commissioner at step five to establish that the claimant can

perform other work that exists in significant numbers in the national economy,

taking into consideration the claimant's RFC, age, education, and work experience.

20 C.F.R.§§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner can satisfy

this burden through the testimony of a vocational expert or by referring to the

Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404,

Subpart P, Appendix 2.  If the Commissioner meets this burden, the claimant is not

disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### DISCUSSION

The ALJ followed the five-step sequential process in evaluating Plaintiff's

claim on remand.  At step one, the ALJ found that Plaintiff met the insured status

requirements of the SSA through September 30, 2020, and that Plaintiff had not

engaged in substantial gainful employment between the alleged onset date of June

1, 2018, and his DLI.  (Doc. 4 at 1001.)

At step two, the ALJ found that Plaintiff had the following severe

impairments: (1) degenerative disc disease; (2) degenerative joint disease; (3)

chronic obstructive pulmonary disease (COPD); (4) history of a traumatic brain

injury; (5) obesity; (6) tinnitus/hearing impairment; (7) seizure disorder with

resulting migraine headaches; (8) adjustment disorder; (9) anxiety disorder; and

(10) post-traumatic stress disorder (PTSD).  (*Id.*)  The ALJ also noted impairments

resulting from hyperlipidemia, astigmatism/visual disturbance, obstructive sleep

apnea, fatigue, and IBS, but determined that each of these was sufficiently

managed, asymptomatic, or temporally limited such that they constituted non-

severe impairments.  (*Id.* at 1001–02.)

At step three, the ALJ determined that during the relevant period, Plaintiff

did not have an impairment or combination of impairments that met or medically

equaled the severity of a listed impairment under 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (*Id.* at 1002–03.)

The ALJ found that Plaintiff had the residual functional capacity to perform

light work with the following limitations:

> He could occasionally push and pull with the bilateral lower
> extremities. He could occasionally perform postural activities, but
> never climb ladders, ropes, and scaffolds. He could frequently reach.
> He could have no more than occasional exposure to atmospheric
> irritants such as dust, odors, fumes, gasses, extreme temperatures, and
> humidity. He should never have exposure to workplace hazards such as
> unprotected heights, moving machinery, open flames, open bodies of
> water, heated equipment such as cooktops and ovens, dry cleaning
> presses and the like or be required [to] work with dangerous work hand
> power tools such as chainsaws. He should not work near hot liquids. He
> could use household scissors and kitchen knives. He should never have
> exposure to vibration nor more than a moderate noise intensity level as
> the term moderate is defined in the Selected Characteristics of
> Occupations (SCO). He could perform unskilled work. He could
> remember simple and detailed instructions and complete simple,
> routine, repetitive tasks. He could have no more than occasional work-
> related interaction with the general public, and no more than occasional
> interaction with supervisors. He could have no more than occasional
> changes in the general nature of the work setting or the tasks to be
> performed. The work needs to be performed at other than regular
> daytime office hours in order to attend medical appointments during
> normal daytime office hours.

(*Id.* at 1006.)  The ALJ noted that Plaintiff's non-severe impairments had also been considered in determining his RFC.  (*Id.* at 1002.)

At step four, the ALJ determined Plaintiff could not perform past relevant work as an infantryman or canine instructor/trainer.  (*Id.* at 1017.)  Proceeding to step five, the ALJ found, based on the vocational expert's testimony elicited in response to a hypothetical reflecting Plaintiff's specific RFC, that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including marker, garment sorter, and housekeeping cleaner.  (*Id.* at 1018.)  This finding accounted for a 50% reduction in the number of positions available in the national economy due to Plaintiff's identified working hour constraints.  (*Id.*)  Accordingly, the ALJ found Plaintiff not disabled.  (*Id.* at 1019.)

Plaintiff again appeals the Commissioner's decision.  First, Plaintiff argues that the ALJ ignored the Court's order to evaluate and consider the frequency and duration of treatments in determining his RFC.  Second, Plaintiff contends that the ALJ ignored the vocational expert's testimony regarding the availability of jobs outside of normal business hours.  Finally, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence in the record, exceeded Plaintiff's capacity, and ignored vocational testimony on Plaintiff's limitations. (Doc. 6 at 10–11.)

**I. The ALJ provided sufficient evidence for finding that Plaintiff was not limited as he alleged and formulated the RFC accordingly.**

Plaintiff asserts that the ALJ neglected their duty under SSR 96-8p by failing to consider the nature, extent, length, and frequency of treatment as well as the specialization and supportability of each of the treating physicians' opinions and Plaintiff's own testimony.  (*Id.* at 14–15.)  Plaintiff argues, without pointing to any particular evidence, that the ALJ ignored evidence of his treatment needs over time in order to discredit unspecified medical opinions and Plaintiff's testimony. (*Id.*) This argument is not supported by the record.

The ALJ's rationale for discrediting Plaintiff's testimony "is clear enough that it has the power to convince," as supported by "specific, clear, and convincing examples across a multi-year period contrasting" the subjective complaints with other evidence, *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022), and the ALJ's consideration of medical opinions is fully consistent with the relevant regulations.

The law of the case doctrine is a discretionary rule that "generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case."  *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). This Court previously reviewed the ALJ's analysis of Plaintiff's subjective symptom testimony and found that the ALJ had provided clear and convincing

reasons supported by substantial evidence for discounting Plaintiff's testimony as to the severity of his physical and mental impairments.  (Doc. 4 at 1101–02.)  The evidence on remand is not substantially different, as the Plaintiff's coverage period ended in September 2020, only a few months after the ALJ's first decision.  (*Id.* at 1249–51.)  The Court therefore will not entertain Plaintiff's relitigation insofar as the ALJ's reasoning has already been affirmed with respect to Plaintiff's testimony in the first hearing.

However, in the second hearing, Plaintiff provided extensive testimony as to his back pain, muscle spasms, migraines, seizures, tinnitus, vestibular issues, and generalized mental health concerns, both within and outside the relevant eligibility period.  (*Id.* at 1008, 1035–49.)  Because the ALJ provided considerable analysis of Plaintiff's testimony in order to duly discount it, the Court will address it in turn.

## A. Plaintiff's Symptom Testimony

When assessing the reliability of a claimant's allegations, an ALJ considers the extent to which those allegations are consistent with the objective evidence and other evidence in the record.  20 C.F.R. § 404.1529(c).  Here, the ALJ provided several different, independently supported bases for discounting Plaintiff's testimony based on its inconsistency.  The symptom evaluation standard requires only that an ALJ "show [their] work" through a rationale that is "clear enough that it has the power to convince," *Smartt*, 53 F.4th at 499, and they have done so.

The first ground for discounting Plaintiff's symptom testimony is that his treatment, both in form and in result, was inconsistent with his alleged severity. While neither is entirely dispositive, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability," and "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

The ALJ found that Plaintiff's back pain, migraines and seizures, vestibular and hearing issues, and mental health concerns improved or were treated conservatively. Plaintiff's back pain was treated conservatively through physical therapy and acupuncture and improved with treatment. (*Id.* at 1009–10.) Likewise, Plaintiff's migraines and seizures also improved with treatment. (*Id.* at 1011–12.) In addition, Plaintiff's own reports to providers validate improvement. (*Id.* (noting that Plaintiff had told providers that his seizures were infrequent and controlled; likewise, his headaches were "only sporadic and brought on by stress").) In the hearing, Plaintiff gave consistent testimony to support a finding of improvement in his alleged vestibular and hearing issues. (*Id.* at 1008, 1011.) As to Plaintiff's mental health concerns, the ALJ found that they were conservatively and successfully treated with therapy and medication. (*Id.* at 1005, 1014.)

It is not only the nature of the treatment that conflicted with Plaintiff's testimony, but also the frequency.  Plaintiff testified that his appointment schedule was entirely preclusive of employment.  (*Id.* at 1048.)  However, the ALJ found that Plaintiff's treatments as reflected in the record, and additionally indicated by Plaintiff, reflected treatments done somewhat irregularly and sometimes remotely. (*Id.* at 1013–14.)  Even so, the ALJ credited Plaintiff's testimony to the effect that the RFC was formulated to allow him to attend appointments during regular daytime office hours.

Further objective medical evidence likewise conflicts with the Plaintiff's testimony.  While a claimant's testimony does not need to be "fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  In Plaintiff's case, objective medical evidence undercuts his claimed severity as to his musculoskeletal pain and his neurological issues.  The ALJ noted that imaging of Plaintiff's back and knees showed "some abnormalities . . . but nothing to support the pain alleged by the claimant." (Doc. 4 at 1009.)  X-rays and an MRI dating from 2016 to 2020 showed only mild degenerative disease.  (*Id.*)  Physical examinations across a similar time period corroborated these normal findings.  (*Id.* at 1009–10.)  As to Plaintiff's neurological issues, EEGs, a CT, and an MRI dating from 2016 through

2019 yielded negative diagnostics.  (*Id.* at 1011.)  Neurological examinations with respect to both seizures and neurocognitive complaints were similarly within normal limits.  (*Id.*)

In addition, evidence in the record shows a conflict between Plaintiff's testimony and his actual activity.  Plaintiff told multiple providers that he was capable of regularly going to the gym, (*id.* at 1012, 1014), and in fact attempted to lift a 90-pound barbell, (*id.* at 1009).  This conflicts with Plaintiff's musculoskeletal pain allegations as well as his mental health concerns.  An ALJ may assess a Plaintiff's reported daily activities to discount subjective complaints when they are inconsistent with alleged impairments.  *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012), *superseded by regulation on other grounds*, 20 C.F.R. § 404.1502(a) (finding that a claimant's allegation of debilitating anxiety was not consistent with her daily activities that involved successful human interaction).  Here, the record supports that Plaintiff was regularly engaging in yardwork and visiting the gym.  He also told examining psychologist Dr. Bolanos that "he spent his day doing housework, taking care of children, building military models, working out, and teaching marksmanship."  (Doc. 4 at 1014.)  These activities are inconsistent with Plaintiff's musculoskeletal pain and mental health complaints and provide grounds for discounting his testimony.

Plaintiff accuses the ALJ of cherry-picking from a mixed record to support the denial of benefits.  (Doc. 6 at 25–26.)  It is true that an ALJ may not "pick out a few isolated instances of improvement over a period of months or years and . . . treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (finding that occasional improvement based on cyclical symptoms within a mental health context was not sufficient to discount a claimant's testimony).  However, Plaintiff points to no specific instance besides his own validly discounted testimony to suggest that the record is at all mixed.  The ALJ has met their burden of "showing their work" in discounting Plaintiff's symptom testimony.

## B. Other Evidence in the Record

In generally asserting that the ALJ inappropriately discounted treating providers' opinions, Plaintiff argues that the ALJ "avoided any attempt to consider the requirements set forth" in 20 C.F.R §§ 404.1527(c) and 416.927(c), the regulations that govern how an ALJ considers medical opinions and prior administrative medical findings.  (Doc. 6 at 15.)  As this Court previously noted, these regulations were superseded in 2017 by §§ 20 C.F.R. 404.1520c(a) and 416.920c(a), and the Plaintiff's cited versions are only relevant for claims dating before 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  This claim dates to June 11,

2019, so the new regulations apply.  The guidelines now provide that, while an ALJ must still *consider* each factor with respect to each medical source and opinion, they need only summarily explain how they considered those opinions "together in a single analysis using the factors above."  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  The ALJ must explain how they considered supportability and consistency but is generally not required to explain how they considered the other factors until and unless two or more equally consistent and well-supported medical opinions conflict.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(2).

As Plaintiff points out, the list of factors facially overlaps with SSR 96-8p in that the ALJ should consider the relationship with the claimant in terms of length, frequency, and purpose in order to demonstrate "whether the medical source has a longitudinal understanding" and the depth of their "level of knowledge" about the Plaintiff's impairments.  20 C.F.R. § 416.920c(c)(3).  But Plaintiff conflates these discrete assessments.  As explained above, in the context of assessing medical opinions and prior administrative medical findings, the ALJ is not required to articulate their consideration of this factor unless presented with conflicting equally consistent and well-supported medical opinions.  In the separate context of determining an RFC under SSR 96-8p, the assessment must be based on "all of the relevant evidence in the case record, such as . . . [t]he effects of treatment,

including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). In the medical opinion context, neither Plaintiff nor the ALJ identify any such equally consistent and well-supported conflicting medical opinions that would have required the ALJ to articulate how they considered it. In the separate RFC context, the ALJ clearly considered Plaintiff's treatment needs by incorporating a limitation into the final assessment. In both contexts, the ALJ met their administrative burden.

   An ALJ's finding of fact is conclusive when supported by substantial evidence, a highly deferential standard that asks only whether the record contains "'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153–54 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Though Plaintiff repeatedly accuses the ALJ of "cherry-picking" from the record and ignoring longitudinal evidence of treatment needs, he does not point to any specific discrepancies or provide any evidence that the ALJ's decision is not supported by the record. (Doc. 6 at 26.) The ALJ looked at Plaintiff's history of care for various impairments from 2016 to 2022—looking outside of the relevant period specifically for purposes of contextualizing Plaintiff's needs over a longer period of time and identifying consistency issues—

17

and found that Plaintiff's needs, to the extent that they were not already validly

discounted, were not supported by the record.

**II. Based on the vocational expert's testimony in response to a hypothetical that included all supported impairments and limitations, the ALJ correctly found that Plaintiff was not disabled within the meaning of the SSA.**

In the previous appeal, this Court remanded Plaintiff's cause with the

instruction to "reconsider whether Plaintiff can perform work found in the national

economy on a regular and continuing basis, based upon a hypothetical that

incorporates all of Plaintiff's impairments and limitations supported by the record."

(Doc. 4 at 1105.)  As described above, the ALJ made a finding of Plaintiff's RFC

that properly accounted for Plaintiff's treatment needs by limiting his work to that

which could be performed outside of normal business hours.

At the second hearing, the ALJ posed two hypotheticals.  The first accounted

for all of Plaintiff's impairments and limitations reflected in the RFC besides the

working hours limitation.  (*Id.* at 1052–53.)  The vocational expert identified three

available jobs: marker (33,000 jobs in the national economy); garment sorter

(54,000 jobs in the national economy); and office helper (45,000 jobs in the

national economy).  After Plaintiff testified that he could not schedule

appointments outside of normal working hours, the second hypothetical

incorporated this limitation:

> Q: . . . [S]o I'm going to add to the hypothetical that the individual—
> the work needs to be able to be performed at other than regular, you

know, daytime office hours Monday through Friday. What, if any, change to your testimony with respect to the other work?
A: Well, the only jobs that probably wouldn't be available because of that would be the office helper. You know, other jobs are going to be available usually between 7 a.m. and 11 p.m., but, I mean, it's difficult to guarantee that. I'd have to say that it's going to—may reduce the number of jobs available, drop them.
Q: Okay. So let's start with that one piece at a time. First of all, what would be the erosion as to the other two jobs?
A: I would have to say probably 50% would be an—would be my professional opinion.
Q: All right. Do you have a substitute for the office helper?
A: Let—hold on one moment please.
Q: That would allow for other than routine business hours.
A: I understand. Yes, another would be a housekeeping cleaner, DOT 323.687-014, SVP of 2, employment nationally is 109,000.
Q: Is that one already eroded for the off routine business hours?
A: No. As far as eroded for office hours, I would reduce that by 50%. Most of those—you know, half those jobs are available during the day. Half would be available like a 3 to 11 position, Your Honor.

(*Id.* at 1054–55.)  The ALJ then verified that the expert's testimony was consistent with the Dictionary of Occupational Titles and was otherwise based upon the expert's personal education, training, and knowledge of the workforce.  (*Id.* at 1055–56.)

Plaintiff's counsel asked the expert to affirm the testimony of the vocational consultant in the first hearing that employers would not allow more than one sick day per month for a total of approximately 12 per year; the expert confirmed that employment would not be sustainable beyond that limit.  (*Id.* at 1056.)  The expert also testified that an employee could be off task at most 10% of a day before suffering adverse employment consequences.  (*Id.*)  Plaintiff's counsel further

evinced their understanding that the expert "testified as to all three jobs there would be a 50% reduction if they had to be from 3 [p.m.] to 11 [p.m.]," and that this testimony was based on the expert's personal knowledge, education, and experience rather than specific statistical documentation.  (*Id.* at 1056–57.) Plaintiff did not dispute the expert's qualifications at the hearing.

Based on the expert's testimony, the ALJ found that even with a 50% reduction in representative jobs reflecting availability outside regular daytime office hours, Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy," and was therefore not disabled.  (*Id.* at 1018–19.)

On appeal, Plaintiff argues that (1) the ALJ failed to develop the record around a specific definition of normal business hours; (2) the ALJ's hypothetical was insufficient because the expert failed to limit jobs to those available outside normal business hours; and (3) because of the alleged insufficient hypothetical, there is no evidence of the number of jobs available outside normal business hours for someone with Plaintiff's limitations.  (Doc. 6 at 19–22.)  Plaintiff's argument propounds that the inclusion of 3 p.m. to 5 p.m. in the expert's testimony invalidates the assessment of available jobs, thereby invalidating the expert's testimony and leaving the ALJ without a basis for her findings.  The Court disagrees.

As the parties note, there is no relevant legal definition or DSM guidance on what constitutes regular working hours. The RFC requirements do not necessitate such guidance: according to SSR 96-8p, the RFC should reflect an individual's ability to "do sustained work activities in an ordinary work setting on a regular and continuing basis," that is, eight hours a day for five days a week or an equivalent work schedule. SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). The ALJ's RFC and related hypothetical sufficiently incorporate this requirement by clearly stating that the available work, which by definition meets the eight hour a day, five days a week requirement of SSR 96-8p, must be performed outside of regular business hours. The ALJ validly discounted Plaintiff's testimony as to his treatment schedule, detailed above, and was not under any obligation to further develop the record around "normal business hours." A 5 a.m. to 1 p.m. schedule, a 12 p.m. to 8 p.m. schedule, a 1 p.m. to 9 p.m. schedule, and so on would leave Plaintiff with sufficient time to meet his treatment needs (to the extent they were not validly discounted) while sustaining eight hours of employment, despite overlap with "regular working hours." The language of the RFC requires work to be able to be performed outside of regular business hours, not *entirely exclusive* of business hours. Plaintiff's interpretation is unduly limited and fails to account for the purpose of including that impairment in the RFC, which was "to attend medical appointments during normal daytime office hours." (Doc. 4 at 1006.) The

hypothetical was appropriately asked, the expert's testimony was appropriately elicited, and the ALJ was in accordance with the law in relying on that testimony to make the ultimate finding.

Further, the ALJ was required to develop the record generally insofar as it was necessary to assess Plaintiff's treatment needs but was not required to do so in any particular form. Plaintiff quantifies his impairment in average absent days per month and posits that the ALJ's failure to incorporate that specific measure into the hypothetical was "fatal to the decision." (Doc. 6 at 24.) He mischaracterizes this number as a finding of fact in the District Court, which it was not; rather, the Court found the allegation of a treatment-related impairment based on this assertion sufficient to necessitate remand. (Doc. 4 at 1103 ("When a plaintiff 'has presented evidence sufficient to establish the possibility that the frequency of [his] medical appointments may inhibit [his] ability to work on a 'regular and continuing basis,' the Court should remand to the ALJ for development in the record and the appropriate consideration.") (quoting *Bourcier v. Saul*, 856 Fed. App'x 687, 691 (9th Cir. 2021)).) The remand order did not require the ALJ to find and quantify Plaintiff's absence in terms of number of days. It simply asked the ALJ to consider the effect of Plaintiff's treatment needs in quantity, necessity, duration, and whether his appointments could be made in a way that would not preclude him from working. (*Id.* at 1102–04.) Again, as discussed above, the ALJ met this

requirement by assessing the duration and regularity of appointments found in the record, eliciting relevant testimony from the Plaintiff during the hearing, and incorporating an irregular working hours requirement in the RFC.  The ALJ did not "ignore" the vocational expert's testimony that a worker could not sustain employment with more than one "sick day" per month; they formulated an RFC that would not require Plaintiff to miss any days.

CONCLUSION

The ALJ fully complied with this Court's remand order and concluded, based on sufficient evidence in the record, that Plaintiff was not disabled within the meaning of the SSA.

Accordingly. IT IS ORDERED that the Commissioner's decision is AFFIRMED, and this case is DISMISSED.  The Clerk of Court shall close this matter and enter judgment in favor of Defendant pursuant to Rule 58 of the Federal Rules of Civil Procedure.

DATED this 25th day of October, 2023.

Dana L. Christensen, District Judge
United States District Court